UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DRAPER LEE QUEEN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1469** |
| **MEDICAL STAFF OF TERREBONNE PARISH CONSOLIDATED GOVERNMENT, ET AL.** | **SECTION: "G"(1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Draper Lee Queen, a state pretrial detainee, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983.[1] In this lawsuit, he claims that he was not adequately protected from COVID while incarcerated at the Terrebonne Parish Criminal Justice Complex ("TPCJC") and did not receive proper medical care at the facility once he contracted the disease. In his original complaint, he listed the "Medical Staff of Terrebonne Parish Consolidated Government" as the only defendant.[2] However, the Court notified him that a jail's "medical staff" is not a proper defendant and afforded him an opportunity to file an amended complaint to identify by name the specific individuals he wished to sue.[3] He then filed an amended complaint adding Nurses "Kelly," "Tina," "Dawn," and "Morgan" as defendants.[4]

---

[1] In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

[2] Rec. Doc. 1.
[3] Rec. Doc. 6.
[4] Rec. Doc. 9.

## I.  Court's Obligation to Screen the Complaint

Plaintiff filed this action *in forma pauperis*.  Concerning such actions, federal law requires:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)  is frivolous or malicious;
> (ii)  fails to state a claim on which relief may be granted; or
> (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, his complaint is also subject to the screening provisions of 28 U.S.C. § 1915A.  That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[5]  Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

---

[5] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II.  Plaintiff's Factual Allegations

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing in this matter on December 3, 2021.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06

(5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a <u>Spears</u> hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996). <u>Spears</u> hearing testimony becomes a part of the total filing by the *pro se* applicant. <u>Id.</u>

Based on the complaint and the <u>Spears</u> hearing testimony, the Court finds that plaintiff is making the following factual allegations in support of his legal claims:

When plaintiff was booked into TPCJC on June 7, 2021, he was placed into a "quarantine dorm" for fourteen days. He and the other inmates in that communal quarantine dorm were not tested for COVID before being housed together.

Approximately two weeks later, plaintiff became ill. On the same day that he first became ill, he lost consciousness and was transported to the hospital. At the hospital, he was diagnosed with COVID, given blood tests, an EKG, a CT scan, a chest x-ray, a vaccine injection, and a pain injection. He was then discharged from the hospital, despite the fact that he was still experiencing symptoms, including severe headaches and trouble breathing.

Upon arriving back at TPCJC, he was placed into a one-person medical cell, where he remained for approximately ten days. Because his symptoms persisted during that time, he continued to request medical attention. However, the nurses told him that there was nothing more they could do for him at that point and that "the virus would just have to pass through." He stated that he received no additional medication or treatment at TPCJC, but he also conceded that he did not know whether the hospital physicians had in fact prescribed any "after-care regimen" for the jail staff to follow.

Although he eventually recovered from his other COVID symptoms, his senses of taste and smell never returned. He stated that will adversely affect his ability to return to his professions upon his release.[6]

### III. Plaintiff's Legal Claims

The Court finds that plaintiff's complaint, liberally construed,[7] asserts two legal claims arising from his incarceration at TPCJC: (1) the defendants failed to adequately protect him against COVID while he was incarcerated at the jail and (2) the defendants failed to provide him with proper medical care once he contracted the disease at the facility. For the following reasons, the undersigned recommends that those claims be dismissed.

### A. Failure-to-Protect Claim

Pursuant to the Fourteenth Amendment, penal officials have a duty to provide a pretrial detainee in their custody "with basic human needs, including … protection from harm protection from harm, during [his] confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).[8] Regarding such claims, the United States Fifth Circuit Court of Appeals has held that

---

[6] In the complaint, plaintiff stated that he has a culinary degree and works as a chef, a profession which requires both of those senses. He also stated that he at times works as a carpenter subcontractor, which requires a sense of smell to detect smoke or fires. Lastly, at the Spears hearing, he testified that he also works as an industrial field technician cleaning tanks, which requires a sense of smell to detect hazardous fumes.

[7] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[8] In this Report and Recommendation, the Court cites to cases involving failure-to-protect claims brought both under the Fourteenth Amendment (which applies to pre-trial detainees, such as plaintiff) and under the Eighth Amendment (which applies to convicted prisoners). All such cases are applicable, in that the duty of protect inmates is the same under both amendments. See Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc) ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement."); Anderson v. Concordia Parish Correctional Facility, No. 15-CV-755, 2015 WL 4067809, at *2 (W.D. La. July 2, 2015) ("The Eighth Amendment's prohibition against 'cruel and unusual punishment' protects the rights of convicted prisoners; the rights of pre-trial detainees … are protected by the 'due process clause' of the Fourteenth Amendment. Allegations of 'failure to protect' … are evaluated under a 'deliberate indifference' standard, whether alleged under the Fourteenth Amendment by pre-trial detainees, or under the Eighth Amendment by convicted prisoners." (citation omitted)).

"[t]o establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a **substantial risk of serious harm** and that prison officials were **deliberately indifferent** to his need for protection." Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (emphasis added).

The first element poses no great obstacle in a COVID case. "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates." Valentine v. Collier, 956 F.3d 797, 801 (5th Cir. 2020).

However, the second element, "deliberate indifference," is normally more problematic for plaintiffs. The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.

Torres v. Livingston, 972 F.3d 660, 663 (5th Cir. 2020) (citation and quotation marks omitted), cert. denied, 141 S. Ct. 1699 (2021).

Here, petitioner faults the defendants for housing him in a communal quarantine dorm when neither he nor the other inmates in the dorm had been tested for COVID.[9] As an initial

---

[9] It is doubtful that the named defendants are the proper defendants with respect to that failure-to-protect claim. To the extent that plaintiff named the "Medical Staff of Terrebonne Parish Consolidated Government" as a defendant, that is clearly improper. A jail's "medical staff" is not a distinct, juridical entity capable of being sued. See, e.g., Granger v. Tangipahoa Parish Jail - Medical Staff, Civ. Action No. 12-2276, 2013 WL 1103279, at *2 (E.D. La. Feb. 5, 2013), adopted, 2013 WL 1103293 (E.D. La. Mar. 15, 2013), aff'd, 554 F. App'x 271 (5th Cir. 2014); Walcott v. Crabtree, Civ. Action No. 13-71, 2013 WL 5236643, at *1 n.1 (E.D. La. Sept. 13, 2013). Although he amended his complaint to add the four nurses as defendants, that change most likely did not improve the matter with respect to the failure-to-protect claim, because "[e]ach **sheriff** shall be keeper of the public jail of his parish...." La. Rev. Stat. Ann. §§ 13:5539(C) and 15:704 (emphasis added). Therefore, it seems more likely that the parish sheriff, not the jail's nurses, would have the ultimate say on the manner in which new inmates housed at the jail. Nevertheless, even if the nurses are proper defendants with respect to plaintiff's failure-to-protect claim, the claim still fails for the reasons explained herein.

matter, the undersigned agrees with plaintiff that it would have been preferable for COVID tests to have been administered to all incoming inmates and for social-distancing to have been practiced. In addition, the undersigned also in no way means to discount how frightening it was for plaintiff to be housed in close quarters with untested strangers while the pandemic was raging in the community. Nevertheless, those simply are not the measures to be used to determine whether there was **deliberate indifference**, as is required to support a § 1983 claim. Instead, the United States Fifth Circuit Court of Appeals has explained:

> In evaluating a prison's response [to the pandemic], deliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm. It requires a showing of a wanton disregard for the prisoners' safety or recklessness. Our inquiry thus centers on whether prison officials recklessly disregarded the risk of COVID-19.

Valentine v. Collier, 993 F.3d 270, 281-82 (5th Cir. 2021) (footnotes, quotation marks, and brackets omitted); cf. Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" (citation and quotation marks omitted)). For the following reasons, the failures plaintiff identified, although perhaps troubling, were not so egregious as to be indicative of the deliberate indifference required to state a nonfrivolous constitutional claim.

As to the lack of testing, it cannot be doubted that it would have been better for all incoming inmates to have been tested for COVID (assuming, of course, that sufficient test kits were even available). But, again, the critical question is not what would have been best – rather, is only what was **constitutionally required**. And, on that point, the United States Fifth Circuit Court of

Appeals has observed that "the CDC guidelines for detention facilities did not require or recommend mass testing" and held that "we are not persuaded that the constitution requires more." Valentine v. Collier, 993 F.3d 270, 286 (5th Cir. 2021).

As to the allegation that all incoming inmates were housed together in the quarantine dorm, the Court construes that allegation as one contending that TPCJC did not implement adequate social-distancing measures. But, again, while social distancing is a laudable goal, it is not always readily achievable in jails. On the contrary, "social distancing is particularly difficult to accomplish in penal institutions," Snyder v. Bergeron, Civ. Action No. 20-2158, 2021 WL 2822376, at *8 (E.D. La. July 7, 2021), a reality acknowledged even in the Centers for Disease Control's advisory guidelines.[10] As a result, "the mere fact that [social distancing] was not achieved is an insufficient basis for finding a constitutional violation." Id.; accord Powell v. Inch, Case No. 3:21-cv-363, 2021 WL 1428418, *2 (M.D. Fla. Apr. 15, 2021) ("The fact that inmates and staff … are unable to achieve social distancing does not by itself show prison officials are deliberately indifferent to the risks posed by this unprecedented virus."); Smith v. Jeffreys, No. 20-1421, 2021 WL 918057, at *2 (C.D. Ill. Mar. 10, 2021) ("It has been recognized the prison officials' … failure to adhere to social distancing does not satisfy either the subjective or objective component necessary for deliberate indifference. In sum, plaintiff's general allegations about a lack of social distancing … at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant

---

[10] See, e.g., https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (Updated June 9, 2021) ("Prevention Practices for Incarcerated/Detained Persons: … Implement social distancing strategies to increase the physical space between incarcerated/detained persons (ideally 6 feet between all individuals, regardless of symptoms), and to minimize mixing of individuals from different housing units. Strategies will need to be tailored to the individual space in the facility and the needs of the population and staff. Not all strategies will be feasible in all facilities.").

risk of harm to plaintiff's health or safety." (citation and quotation marks omitted)); Mayfield v. Peissig, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) ("[P]laintiff's general allegations about a lack of social distancing … at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety."), appeal dismissed, No. 20-1982, 2020 WL 7238281 (7th Cir. Aug. 12, 2020).

For these reasons, plaintiff's failure-to-protect claim should be dismissed.

### B.  Medical Claim

Plaintiff's medical claim likewise has two components.  Specifically, "[t]he Fourteenth Amendment guarantees pretrial detainees a right not to have their **serious medical needs** met with **deliberate indifference** on the part of the confining officials." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (emphasis added; quotation marks omitted).[11]

The first component does not pose a significant obstacle here.  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  This Court has no hesitation in concluding that plaintiff's COVID infection, which resulted in a loss of consciousness and necessitated an emergency trip to the hospital, rose to the level of a serious medical need.

---

[11] In the discussion of this medical claim, the Court likewise cites to cases decided under both the Fourteenth and Eighth Amendment because, once again, the duty involved is identical regardless of whether the claim is asserted by a pretrial detainee or a convicted prisoner. See, e.g., Cleveland v. Bell, 938 F.3d 672, 676 (5th Cir. 2019).

But this claim likewise falters at the "deliberate indifference" requirement. Regarding the "deliberate indifference" that must be shown with respect to a medical claim, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, **the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs**. Furthermore, the **decision whether to provide additional treatment is a classic example of a matter for medical judgment.** And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (emphasis added; citations, quotation marks, and brackets omitted).

Even plaintiff does not seem to suggest that there was any deliberate indifference when he initially fell ill. On the contrary, he testified at the Spears hearing that he first experienced symptoms, lost consciousness, and was transported to the hospital all on the same day.

Rather, his medical claim appears to focus only on what transpired once he returned from the hospital. Specifically, he alleges that although he was still experiencing COVID complications, including severe headaches and trouble breathing, he was offered no additional medical treatment at that time. He alleges that the jail nurses instead simply stated that there was nothing more they could do for him and that "the virus would just have to pass through."

While that response may not have been a particularly empathetic one, "a medical staff member's poor bedside manner is not alone actionable or indicative of deliberate indifference to a serious medical need." McBride v. Soignet, Civ. Action No. 21-525, 2021 WL 4896475, at *4 (E.D. La. Aug. 16, 2021), adopted, 2021 WL 4893698 (E.D. La. Oct. 20, 2021).

10

Moreover, plaintiff's allegations are not sufficient for this Court to find that the response was in any way improper as a matter of constitutional law.  As noted, plaintiff had already been transported to the hospital, where he underwent thorough examination and testing, received treatment, and was discharged back to the jail to recover.  He does not allege that he was prescribed additional treatments by either physicians at the hospital or a physician at the jail which the nurses then refused to administer; quite the reverse, he readily conceded at the Spears hearing that he did not know whether the doctors had prescribed any "after-care regimen" at all for the jail staff to follow.  He likewise does not allege that the nurses in fact had at their disposal any additional forms of medically necessary treatments which they were withholding from him.  In other words, he has not adequately alleged that the statement by the nurses to the effect that there was simply nothing more they could do for him was in any way untrue.  The nurses cannot be faulted for failing to offer treatments which had not been prescribed or were unavailable.

That said, the Court does not doubt that plaintiff's illness was frightening and painful.  Nevertheless, he was provided with prompt medical care at hospital, and the fact that he was neither cured nor relieved of his symptoms is not determinative.  Federal constitutional protections are not violated simply because an inmate's medical care was unsuccessful or because pain persisted despite that care.  Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

For these reasons, plaintiff has not stated a nonfrivolous constitutional claim with respect to his medical care at TPCJC.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 22nd day of February, 2022.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**JANIS VAN MEERVELD**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**